# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. CR610-037 |
| | ) | |
| GALEN E. VANORD | ) | |

## REPORT AND RECOMMENDATION

After Galen E. Vanord pulled his truck into a Richmond, Virginia truck terminal, law enforcement agents executed a warrant to search it for evidence of child pornography. During that search two agents took him aside and questioned him, then later polygraphed him with no defense lawyer present. They ultimately found child pornography on his laptop computer.

Indicted for production of child pornography, doc. 1, Vanord now moves to suppress any statements he made to the agents. Doc. 32. In his brief he claims that the agents failed to *Mirandize* him and that the government has produced no *Miranda* waiver. Doc. 32-1 at 1-2. Also, he contends that he repeatedly invoked his right to counsel but the agents ignored him. *Id.* at 2. Finally, he contends, the incriminating

statements he made were involuntary "due to coercion, duress, and inducements of the government." *Id.* The government responds that Vanord waived his *Miranda* rights, did not invoke his right to counsel until after several hours in custody (at which point questioning ceased), and was subjected to no pressure or coercion of any kind. Doc. 33 at 2-5.

Long-established legal principles apply here:

> While the Fifth Amendment's privilege against self-incrimination is fully applicable during a custodial interrogation, a suspect may waive his right to remain silent after being properly advised of it, provided he does so "voluntarily, knowingly and intelligently." *Miranda v. Arizona*, 384 U.S. 436, 444, 460–61, 86 S. Ct. 1602, 1612, 1620–21, 16 L.Ed.2d 694 (1966). The government has the burden of showing the knowing and intelligent nature of a waiver. Id. at 475, 86 S.Ct. at 1628.

*United States v. Farley*, 607 F.3d 1294, 1326 (11th Cir. 2010). Also,

> "under *Miranda*'s prophylactic protection of the right against compelled self-incrimination, any suspect subject to custodial interrogation has the right to have a lawyer present if he so requests, and to be advised of that right." *Montejo v. Louisiana*, __U.S. ___, 129 S. Ct. 2079, 2089, 173 L.Ed.2d 955 (2009). Pursuant to the "prophylactic protection of the *Miranda* right" found in *Edwards v. Arizona*, 451 U.S. 477, 101 S. Ct. 1880, 68 L.Ed.2d 378 (1981), "once such a defendant 'has invoked his right to have counsel present,' interrogation must stop." *Id.*, 129 S. Ct. at 2089–90 (quoting Edwards, 451 U.S. at 484).

*Jones v. Thompson*, 2011 WL 2144615 at * 5 n. 4 (S.D. Ga. Apr. 12, 2011). Finally,

2

> [i]t is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction.

*Jackson v. Denno*, 378 U.S. 368, 376 (1964) (cite omitted). Thus, "if a suspect makes a statement during custodial interrogation, the burden is on the Government to show, as a 'prerequisit[e]' to the statement's admissibility as evidence in the Government's case in chief, that the defendant 'voluntarily, knowingly and intelligently' waived his rights." *J.D.B. v. North Carolina*, ___ U.S. ___, 131 S. Ct. 2394, 2401 (2011) (quotes and cites omitted).

At the evidentiary hearing the Court heard from two witnesses: FBI Special Agents George Howell and Travis Witt. Vanord neither testified nor adduced any evidence to support his contentions.[1] Agent Howell and Virginia State Police officer Tony Chrisley arrested and

---

[1] Vanord's pre-hearing affidavit is not usable evidence. Doc. 32 at 14-20. It established his entitlement to an evidentiary hearing, *see* L.Cr.R. 12.1, but it does not qualify as evidence because it was not subject to cross-examination. *United States v. Terry*, CR406-332, docs. 39 & 44, *reported at* 2007 WL 496630 at * 4 (S.D. Ga. Feb. 12, 2007), *aff'd*, 258 F. App'x 304 (11th Cir. 2007); *see also United States v. Smalls*, CR409-431, doc. 23 at 4 n. 3, *reported at* 2010 WL 5071984 at * 2 n. 3 (S.D. Ga. Nov. 18, 2010). Vanord, for that matter, did not even refer to it during the hearing.

questioned Vanord at the truck stop. Agent Witt, an FBI polygrapher, later questioned Vanord during and after a polygraph examination.

Howell and Chrisley spoke with Vanord first, shortly after 11:00 p.m. on March 3, 2010. Before doing so, Howell reviewed with Vanord the standard "Advice of Rights"[2] form that the FBI uses in custodial interviews. He did the same for a second, identical form at 12:02 a.m. the next morning, which Vanord signed after he agreed to a polygraph test. And he did likewise for the "Consent To Interview With Polygraph"

---

[2] This "FD–395" form clearly conveyed the required *Miranda* warnings:

> Before we ask you any questions, you must understand your rights.
>
> You have the right to remain silent.
>
> Anything you say can be used against you in court.
>
> You have the right to talk to a lawyer for advice before we ask you any questions.
>
> You have the right to have a lawyer with you during questioning.
>
> If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
>
> If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

FD–395, Gov't Ex. 1. Vanord initialed each component of the *Miranda* warning set forth on the form, then signed it, right under this statement: "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." *Id.*

form in the record.[3] Gov't Ex. 3. Vanord rebutted none of the following testimony:

> Q. Did you, in the course of or prior to that interview, go over the "Advice of Rights" form with him?
>
> A. [Howell] I did.
>
> * * * *
>
> Q. Did you prepare that [form?]
>
> A. I did.

---

[3] Howell was present with polygraph examiner Witt when Vanord signed the second "Advice" form at Richmond-area FBI offices. Howell went over that form, plus the polygraph consent form with him. Vanord, says Howell, exhibited no misunderstanding or inability to understand the forms he was signing. Nor did he ask for a lawyer. Witt corroborated this, and testified that Vanord voluntarily submitted to the polygraph.

Both Howell and Witt testified that their prime focus during these sessions was to determine whether Vanord had had any actual sexual contact with children. Vanord denied such contact, but he disclosed to Witt (during Witt's pre-test questioning) that he himself had been a victim of sexual abuse, and some of it involved Vanord's father forcing him to have sexual contact with other children. Witt's polygraph test showed that Vanord exhibited deception when asked if he had sexually abused any children. When he confronted Vanord about that Vanord did not request counsel. Witt then invited Howell and Chrisley into the room, relayed the "deception" results to them, and the three men then continued questioning Vanord for about another hour or so. Howell testified that, "at the very end of [that] interview Mr. Vanord said that he was 'done answering questions' and thought he needed a lawyer. . . . That's what stopped our interview." Howell summed up: "In all the conversations we had with Mr. Vanord, they were all conversational, amicable, there was never any kind of hostility or wild accusations or anything like that."

Witt corroborated Howell on that point. He testified that there were no threats or promises or other forms of coercion employed during his encounter with Vanord. Witt also asked Vanord how much he had slept during the last 24 hours and Vanord said "about 7 hours." Despite the late hour (all contact with Witt came after midnight), Witt discerned no signs of fatigue-based diminished capacity.

5

* * * *

Q. Is there the signature of Mr. Vanord on [the form] as well?

A. I believe so. I can't read it, but –

Q. -- Were you there when that was signed?

A. Yes.

Q. You witnessed his signature?

A. I did.

The entire two-hour interview was voluntary and no coercion was employed:

Q. What was the tone of your interview, the meeting?

A. Mr. Vanord was very cooperative, we sat down, we explained to him what was going on, I went over the Advice of Rights form with him, he agreed to talk to us. I wouldn't say there were any hostilities. I mean, there wasn't any sort of interrogation or anything like that it was just, he seemed to be very forthright and honest with us; it was just a conversation.

Vanord did not request counsel until about an hour or so *after* he was informed that he failed the polygraph test. He indicated a clear understanding of what the questioning was about and did not appear to be intoxicated, unduly fatigued (he had been on the road for only 7 hours), or unable to comprehend anything discussed.

The Court credits the law enforcement testimony and finds no evidence whatsoever of overreaching, threats, false promises, or anything else rendering Vanord's statements involuntary. Vanord freely and voluntarily signed the above-noted advice and consent forms, and he knowingly and intelligently waived his *Miranda* rights. Once he invoked his right to counsel, all questioning ceased. His suppression motion, then, should be **DENIED**.

Vanord also filed a Double Jeopardy motion (doc. 42), but it should also be **DENIED**. First, it is untimely. Second, it fails on the merits, since Vanord does not really argue that this is the same crime, different day. And third -- as was made clear at oral argument -- his contention goes to sentencing considerations, so he can raise it there.

**SO REPORTED AND RECOMMMENDED** this __19th__ day of October, 2011.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA